IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Cody Raymond Kern, | Civil File No. _____ |
| Plaintiff, | **COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| Jodi Harpstead, in her capacity as the Commissioner of the Minnesota Department of Human Services, State of Minnesota, | |
| Defendant. | |

---

COMES NOW the Plaintiff, Cody Raymond Kern, through his attorney, Jason L. Schellack, Autism Advocacy & Law Center, 901 North Third Street, Suite 120, Minneapolis, MN 55401, who alleges the following for his cause of action against the Defendant.

### JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by the Plaintiff's Complaint.

### I.  INTRODUCTION

1. Cody Raymond Kern ("Kern") is an individual with Autism Spectrum Disorder ("ASD"). Kern currently resides at the Minnesota Security Hospital ("MSH") in Saint Peter, MN. The MSH facility is operated by the Defendant, the Minnesota Department of Human Services ("DHS").

2. Since August 28, 2019 Kern has been court-ordered to reside at the MSH through a civil commitment proceeding in State District Court File 10-PR-19-52, which is venued in Carver County, MN.

1

3. MSH is responsible for providing Kern with direct care and treatment that will allow him to be discharged into the community or a less restrictive setting.

4. MSH has been aware of Kern's ASD diagnosis since his arrival in September 2019.  Despite, however, being aware of Kern's ASD diagnosis, MSH has failed to provide him with any accommodations for his ASD that allow him full and equal access to the services and programs it provides to other residents who do not have ASD.  MSH has also punished Kern for demonstrating behaviors symptomatic of his disability by reducing his liberty privileges within its facility.

5. As a result of MSH's failure to provide Kern with accommodations for his ASD and MSH punishing Kern for having ASD, Kern has been unable to make sufficient progress on his treatment plan and has been denied the opportunity to be discharged back into the community.

6. Kern brings this legal action pursuant to the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12132), the Federal Rehabilitation Act ("Rehabilitation Act") (29 U.S.C. § 794), and the Minnesota Human Rights Act (MHRA) (Minn. Stat. § 363A.12), to obtain all damages, declaratory relief, and injunctive relief provided by law.  Kern also seeks to recover statutory attorneys' fees incurred in bringing this action.

## II.  RELATED CASES

7. There are no related cases at this time.

## III.  JURISDICTION AND VENUE

8. Kern brings this action pursuant to Title II of the ADA, 42 U.S.C. §§ 12101 and 12131 *et seq.*, and implementing regulations; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.

§ 794 and implementing regulations; and the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01 and 363A.12 *et seq.*

9. This Court has federal question jurisdiction over the claims pursuant to 28 U.S.C. § 1331 and has original jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) and (4). This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(b), as the conduct alleged is occurring in this District.

### IV.  PARTIES

11. The Plaintiff, Cody Raymond Kern, resides in Nicollet County, Minnesota.

12. Kern has medical diagnoses of Schizoaffective Disorder, bipolar type, and Autism Spectrum Disorder, without accompanying intellectual or language impairment.

13. The Defendant, the Minnesota Department of Human Services, is a state agency operated by the State of Minnesota. The Minnesota Security Hospital is a treatment facility operated by the Defendant.

14. The Defendant is a public entity covered by Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R. Part 35).

15. The Defendant operates the MSH, which is a program or activity receiving federal financial assistance as defined by the Federal Rehabilitation Act, 29 U.S.C. § 794 and its implementing regulations (45 CFR § 1232.3).

16. The Defendant is a public service, as defined by the Minnesota Human Rights Act, Minn. Stat. § 363A.03, subd. 34.

## V. FACTS

17. The Defendant provides direct care and treatment to all residents who are under civil commitment at its facility. Residents have treatment plans, developed by the Defendant, that are designed to allow residents to recover and be discharged into the community or into a less restrictive setting.

18. Kern has been under a civil commitment in State District Court File 10-PR-19-52, which is venued in Carver County, since June 4, 2019.

19. Kern has been a resident at the MSH since August 28, 2019.

20. Kern first completed a diagnostic assessment with his former psychiatrist, Dr. Earl Shugarman, through Windhorse Community Services, in Boulder, Colorado, in March 2015. Dr. Shugarman was the first medical professional to suspect an ASD diagnosis. Dr. Shugarman's assessment did result in an ASD diagnosis.

21. Kern completed a diagnostic assessment with Dr. Mark Foster, PsyD, through the Associated Clinic of Psychology in September 2016. As a result of this evaluation, Kern was diagnosed with Major Depressive Disorder, Generalized Anxiety Disorder, and Autism Spectrum Disorder.

22. Most recently, Kern completed an updated neuropsychological evaluation with Dr. Naomi Nystrom, PsyD, through the MSH in October 2023. As a result of this updated evaluation, Kern was diagnosed with Schizoaffective Disorder, bipolar type, and Autism Spectrum Disorder, without accompanying intellectual or language impairment.

23. The MSH uses a liberty system to track residents' progress on their treatment plans. The different levels of liberty are designated by color. The colors are, in order from less liberty to more liberty, grey, orange, yellow, blue, and green.

24. Residents start at the lowest liberty level, grey.  They must then work their way through the color-coded liberty levels until they achieve green.  Once residents achieve green, then they are eligible for discharge.

25. Kern began his treatment at the Elm Unit.  Kern resided at the Elm Unit September 2019 – November 2019.  The Elm Unit is an introductory unit.

26. At the Elm Unit, Kern and his parents, Rod Kern and Cindy Kern ("Parents"), attended an introductory meeting with MSH staff.  The Parents informed MSH staff of Kern's 2016 ASD diagnosis from Dr. Mark Foster of the Associated Clinic of Psychology and the same diagnosis from Dr. Earl Shugarman from March 2015.

27. At the Elm Unit, Kern began treatment at the grey liberty level.

28. Kern then resided at the Birch Unit December 2019 – April 2020.

29. While at the Birch Unit, Kern had no behavioral issues and followed his treatment plan.

30. At Kern's quarterly review meeting at the Birch Unit, Kern and his Parents addressed the impact his ASD would have on his treatment plan.

31. At the Birch Unit, Kern stayed static at the grey liberty level.

32. Kern then resided at the Oak Unit April 2020 – November 2020.  At the Oak Unit, Kern achieved the orange liberty level.  He attended many community outings with no behavior problems.

33. Kern then resided on the Bartlett Unit November 2020 – October 2021.

34. The Bartlett Unit was considered pre-transition.  Kern participated in many successful community outings.  Kern displayed no behavioral problems until MSH staff changed his medications.  At the Bartlett Unit, Kern achieved the yellow liberty level.  In May 2021, Kern was approved to put in for the blue liberty level.

35. While at the Bartlett Unit, Kern's social worker, Jody Weinart, requested a copy of Kern's 2016 diagnostic assessment from Dr. Foster.

36. While at the Bartlett Unit, Kern went through significant medication changes implemented by MSH staff.

37. Kern remained at the yellow liberty level because he needed to stabilize his medications and complete the MSH relapse prevention program.

38. After a disputed behavioral incident in October 2021, Kern was demoted to the lowest grey liberty level, and required to move to a secure unit.

39. Kern then resided at the Tamarack and Willow Units for a brief period of time due to complications with his medication changes.

40. While at the Tamarack and Willow Units, Kern's medications were again adjusted.

41. After the medication adjustments, Kern experienced a more noticeable clarity of thought and decreased negative side effects.

42. At the Tamarack and Willow Units, Kern remained static at the grey liberty level.  Because a bed was needed at the Tamarack Unit for another resident, MSH staff briefly moved Kern to the Pine Unit.  Kern then moved to the Oak Unit, which had been the plan all along.

43. Kern then resided on the Oak Unit October 2021 – October 2022.

44. At the Oak Unit, Kern once again achieved the orange and yellow liberty levels.

45. Kern then resided at the Ironwood Unit October 2022 – February 2023.

46. At the Ironwood Unit, Kern began at the yellow liberty level.

47. On May 6, 2022, Kern's yellow liberty level was placed on hold for two weeks.

48. While at the Ironwood Unit, Kern displayed behaviors symptomatic of his ASD. Rather than address and accommodate Kern's ASD behaviors, the MSH instead, again, adjusted his medications.

49. The number of unit changes, eleven in total, was chaotic and confusing for Kern. Because of Kern's ASD, he struggles with transitions, maintaining relationships, adapting to new environments, and establishing new relationships with unknown individuals. MSH staff provided no accommodations to Kern as he was compelled to change units eleven times.

50. Kern's Parents stressed to MSH staff that Kern's perceived problem behaviors, such as poor social interaction and poor social boundaries, were symptoms of his ASD and not a result of Kern choosing to not follow treatment recommendations and staff directions.

51. To the surprise of Kern's Parents, MSH staff informed them they had never read the 2016 diagnostic assessment from Associated Clinic of Psychology and were completely unaware of Kern's ASD diagnosis.

52. Kern continued to display behaviors that are symptomatic of his ASD. While at the Ironwood Unit, Kern attempted to engage in a positive social interaction with an MSH nurse. Kern was attempting to greet the MSH nurse, with whom he had a previous positive relationship at the Pine and Tamarack Units.

53. MSH staff classified Kern's behavior as "stalking" and took adverse action against him. As a result of this incident, MSH staff demoted Kern from yellow liberty level to orange liberty level. MSH discriminated against Kern and punished him for displaying behaviors that are symptoms of his ASD.

54. While still at the Ironwood Unit, Kern was sitting in the café and gazing at a female staff member across the room. Due to his ASD, Kern has difficulty reading facial expressions and

maintaining socially acceptable eye contact. The staff member reported Kern's behavior, which was once again classified as "stalking." MSH again took adverse action against Kern and demoted him from orange liberty level to grey liberty level, the lowest liberty level. MSH again discriminated against Kern and punished him for displaying behaviors that are symptoms of his ASD.

55. As a result of these two incidents, Kern stayed at the grey liberty level for over a year without any liberty privileges.

56. Kern lost all liberty privileges due to symptoms of his ASD, including displaying poor social interactions, displaying poor social boundaries, difficulty understanding body language, difficulty understanding gestures, and difficulty understanding facial expressions. MSH staff have taken no efforts to modify its programs to accommodate Kern's disability. To the contrary, MSH staff have discriminated against Kern for having ASD and punished him.

57. Since March 2023, Kern has resided at the Fraser Unit.

58. Despite Kern's and his Parents' ongoing advocacy efforts, Fraser Unit staff were also completely unaware of Kern's ASD diagnosis and need for accommodations to successfully complete MSH treatment.

59. At the Fraser Unit, Kern started off back at the lowest grey liberty level.

60. On multiple occasions, Kern requested that MSH staff approve him to the orange liberty level.

61. Kern's multiple requests were denied. MSH staff cited his perceived negative behaviors, including stalking and staring behaviors, as the reason for not progressing to orange liberty level.

62. Kern's perceived negative behaviors, however, are behaviors that are symptoms of his ASD, and not a result of Kern choosing to not follow treatment recommendations and staff directions.

63. Kern strongly desires to move through the liberty levels. To do this, MSH must accommodate his disability and stop discriminating against him. To be successful, MSH staff must understand how Kern's disability affect him and adjust its treatment strategies to meet his needs. Kern must achieve green liberty level to be discharged into the community or a less secure environment.

64. Upon information and belief, MSH previously contracted with the Autism Society of Minnesota ("ASM") to provide training to staff on working with residents with ASD. However, MSH terminated its training contract with ASM approximately five years ago. As a result, MSH staff lack current knowledge regarding how to provide appropriate accommodations to residents with ASD.

65. On October 24, 2023, the MSH released its own Neuropsychological Evaluation by Dr. Nystrom, which acknowledged Kern's ASD.

66. On October 31, 2023, after 19 months of treatment at MSH, Kern was finally again promoted to the second liberty level, the orange liberty level.

67. At Kern's recent quarterly review meeting on October 3, 2023, Kern and his Parents discussed the new evaluation by Dr. Nystrom. Kern's treatment team, led by psychologist Dr. Carol Leinonen, acknowledged Kern's ASD diagnosis. She stated, however, that MSH would not make any changes to his current treatment plan to accommodate his ASD diagnosis.

68. As of the date of this Complaint, there have been no changes to Kern's treatment plan or his liberty level.

69. By not providing Kern with accommodations for his ASD, the MSH has failed to accommodate Kern's disability, discriminated against him for having a disability, and prevented him from full and equal access to the MSH's direct care and treatment services.

70. The Defendant's actions subjected Kern to illegal discrimination based on his disability.

71. As a result of the Defendant's actions, omissions, policies and practices, and its violations of the ADA, Federal Rehabilitation Act, and Minnesota Human Rights Act described in this Complaint, Kern has suffered economic harm, including, but not limited to, emotional distress, personal humiliation, and loss of personal reputation.

## VI. FIRST CAUSE OF ACTION

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

72. Kern re-alleges and incorporates by reference herein the allegations in Paragraphs 1 through 71.

73. Kern is a person with a disability as that term is used by 42 U.S.C. § 12132.

74. The Defendant is a public entity covered by Title II of the Americans with Disabilities Act (42 U.S.C. § 12132).

75. The Defendant is responsible for operating, managing, and supervising the MSH.

76. The Defendant's failure to provide accommodations to Kern for his ASD deprived him of equal access to and benefit from Defendant's services, as described in Paragraphs 17-71 of this Complaint, and violated Title II of the ADA (42 U.S.C. §12132) and its implementing regulations.

77. The Defendant's actions, omissions, policies, and practices discriminated against Kern on the basis of disability and denied him the equal benefit of its services, programs, and activities in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R. Part 35).

78. As a result of Defendant's actions, omissions, policies and practices, and its violations of Title II of the Americans with Disabilities Act, described in this Complaint, Kern suffered the harm described in Paragraph 71 of this Complaint.

## VII.  SECOND CAUSE OF ACTION

## VIOLATION OF THE FEDERAL REHABILITATION ACT

79. Kern re-alleges and incorporates by reference herein the allegations in Paragraphs 1 through 71.

80. To the best of Kern's information and belief, the Defendant is an entity which receives funding from the United States Government for the operation of the MSH and is, therefore, covered by the Federal Rehabilitation Act (29 U.S.C. § 794).

81. Kern is a person with a disability as that term is used by 29 U.S.C. § 794.

82. The Defendant's failure to provide accommodations for Kern's ASD deprived Kern of equal access to and benefit from Defendant's services, as described in Paragraphs 17-71 of this Complaint, and violated the Federal Rehabilitation Act (29 U.S.C. § 794) and its implementing regulations.

83. As a result of Defendant's actions, omissions, policies and practices, and its violations of Federal Rehabilitation Act, described in this Complaint, Kern suffered the harm described in Paragraph 71 of this Complaint.

## VIII.  THIRD CAUSE OF ACTION

## VIOLATION OF MINNESOTA HUMAN RIGHTS ACT

84. Kern re-alleges and incorporates by reference herein the allegations in Paragraphs 1 through 71.

85. Kern is a person with a disability as that term is used by the Minnesota Human Rights Act, Minn. Stat. §§ 363A.03, subd. 12, and 363A.12.

86. MSH is a state security hospital operated by the Defendant, the Minnesota Department of Human Services.

87. The MSH is a public service covered by the Minnesota Human Rights Act, Minn. Stat. §§ 363A.03, subd. 35, and 363A.12.

88. The conduct of Defendant and its officers, managers, supervisors, and agents constitutes disability discrimination in public service regarding the full and equal access to, admission to, full utilization of or benefit from Defendant's public service, and its failure to ensure program access for disabled persons, in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.12, subd. 1.

89. Defendant's actions, omissions, policies, and practices have subjected Kern to illegal discrimination by reason of his disability in violation of Minn. Stat. §§ 363A.12 and 363.03, subd. 33.

90. As a result of Defendant's actions, omissions, policies and practices, and its violation of the Minnesota Human Rights Act described in this Complaint, Kern suffered the harm described in Paragraph 71 of this Complaint.

## IX.  RELIEF REQUESTED

Kern, therefore, respectfully requests that this Court issue the following relief:

91. Issue a declaratory judgment that Defendant's actions described in this Complaint violated the Americans with Disabilities Act, the Federal Rehabilitation Act, and the Minnesota Human Rights Act.

92. Issue an order for injunctive relief directing Defendant to cease and desist from violating the Americans with Disabilities Act, the Federal Rehabilitation Act, and the Minnesota Human Rights Act.

93. Issue an order for injunctive relief directing Defendant to take affirmative action to comply with the Americans with Disabilities Act, the Federal Rehabilitation Act, and the Minnesota Human Rights Act, including, but not limited to:

    a. Adopting and implementing effective policies, practices, and procedures to ensure Defendant provides reasonable accommodations to residents with ASD;

    b. Providing Kern with reasonable accommodations in his treatment plan so that he can progress through the liberty levels at a rate commensurate with his peers;

    c. Enjoining Defendant from discriminating against Kern in response to behaviors that are symptomatic of his disability, including perceived "staring" and "stalking" behaviors;

    d. Advancing Kern immediately to liberty level blue, which he would have achieved but for the Defendant's illegal discrimination on the basis of his disability;

    e. Training its staff regarding its obligations to Kern under the Americans with Disabilities Act, the Federal Rehabilitation Act, and the Minnesota Human Rights Act, by partnering with the Autism Society of Minnesota or another qualified agency;

    f. In the alternative, transferring Kern to a DHS approved facility that can appropriately accommodate his ASD and Schizoaffective Disorder; and

    g.  Reporting to the Court and to Kern concerning its compliance with the Court's Order.

94. Appoint an independent monitor responsible for overseeing Defendant's compliance with the Court's Orders;

95. Award compensatory damages in an amount in excess of Fifty-Thousand Dollars ($50,000.00), pursuant to Minn. Stat. § 363A.33, subd. 6, and Minn. Stat. § 363A.29, subd. 4, the ADA, and the Federal Rehabilitation Act;

96. Award punitive damages in the amount of Twenty-Five Thousand Dollars ($25,000.00), pursuant to Minn. Stat. § 363A.33, subd. 6, and Minn. Stat. § 363A.29, subd. 4(b);

97. Award treble damages, pursuant to Minn. Stat. § 363A.33, subd. 6, and Minn. Stat. § 363A.29, subd. 4(a);

98. Order the Defendant to pay a civil penalty pursuant to Minn. Stat. § 363A.33, subd. 6, and Minn. Stat. § 363A.29, subd. 4(a);

99. Award Kern statutory attorneys' fees and expenses pursuant to Minn. Stat. § 363A.33, subd. 7, the ADA, and the Federal Rehabilitation Act; and

100.   Award Kern such other and further injunctive relief as the Court may deem reasonable and just.

RESPECTFULLY SUBMITTED,

AUTISM ADVOCACY & LAW CENTER

Date: <u>February 6, 2024</u>

Jason L. Schellack, License No. 0391579
901 North Third Street, Suite 120
Minneapolis, MN 55421
Tel. 612-200-9920
Email: jason@autismlawcenter.com

*Attorney for Plaintiff*