UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cody Raymond Kern, | Case No. 24-cv-0348 (KMM/SGE) |
| Plaintiff, | |
| v. | **ORDER** |
| Shireen Gandhi, *in her capacity as the Commissioner of the Minnesota Department of Human Services*, and State of Minnesota, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Compel Discovery (Dkt. 65). As set forth below, this Court denies the motion.

## BACKGROUND

Plaintiff resides at the Minnesota Security Hospital in St. Peter, Minnesota ("MSH"), where he has been civilly committed pursuant to a court order since August 2019. Plaintiff has asserted that Defendants violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Federal Rehabilitation Act ("RA"), 29 U.S.C. § 794. (*See* Order on Mot. to Dismiss, Dkt. 78.)

In January 2025, Defendants propounded discovery on Plaintiff. In addition to Interrogatories and Requests for Production served on Plaintiff, Defendants served Subpoenas to Testify and Subpoenas to Produce Documents on Cynthia and Rodman Kern, Plaintiff's parents. (Harris Decl., Dkt. 68, ¶ 5; *id.* Ex. E.) These subpoenas requested all communications between the Kerns and any other individual, including Plaintiff's counsel

Jason Schellack and Christopher E. Morris[1] and any DHS employees, regarding this matter. (Harris Decl., Ex. E.)

The Kerns responded to Defendants' requests by producing several documents and asserting various objections. Specifically, the Kerns objected that the Subpoenas sought documents protected by the attorney-client privilege. (Harris Decl., Ex. F.) Plaintiff also produced a privilege log that identified 104 emails between the Kerns and Plaintiff's counsel as subject to the protection of the attorney-client privilege and the work product doctrine. (Harris Decl. ¶ 7, Ex. G.) Both Plaintiff and the Kerns took the position that the Kerns' communications with Plaintiff's counsel about this case are protected from disclosure by the attorney-client privilege and work product doctrine by operation of Rules 1.14(c) and 1.6 of the Minnesota Rules of Professional Conduct.

At deposition, the Kerns' testimonies raised issues regarding whether they had conducted a reasonable search for the documents requested, whether they refused to produce responsive documents, and whether some of the produced documents were incomplete with respect to content and metadata. A supplemental production from Plaintiff did not satisfy Defendants' concerns, though the parties were able to resolve the issues regarding document production format, metadata, and reasonable searches. The instant motion followed.

---

[1] Mr. Morris was appointed to represent Plaintiff in his civil commitment proceeding. Order Appointing Attorney, *Matter of Commitment of Cody Raymond Kern*, Case no. 10-PR-18-145, Carver County Dist. Ct. (May 29, 2019); Minn. Stat. § 253B.7, subd. 2(c).

2

This Court heard oral argument on the motion on June 17, 2025. (*See* Dkt. 81) At the hearing, counsel for the parties informed this Court that they had resolved some of the issues via meet-and-confer and all that remained contested were the issues of privilege. Defendants seek an order compelling Cynthia and Rodman Kern to produce all documents identified in their privilege log and all others withheld on the basis of asserted attorney-client privilege.

## ANALYSIS

### I. Legal Standard

Under the Federal Rules, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the dispute, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Also, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Courts have broad discretion in handling pretrial procedure and discovery. *See*, *e.g.*, *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 353 (8th Cir. 2020) ("A district court has very wide discretion in handling pretrial discovery . . . ." (quotation omitted)); *Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges are afforded wide discretion in handling

3

discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice." (cleaned up)).

### A. Attorney-Client Privilege

"'The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.'" *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (quoting *Trammel v. United States*, 445 U.S 40, 51 (1980)). Generally speaking, the attorney-client privilege protects from disclosure confidential communications between attorneys and their clients made for the purpose of rendering or obtaining legal advice. *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011). The party attempting to prevent disclosure by asserting the privilege bears the burden of establishing its applicability. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985). Where, as here, a case is before the federal court on its subject-matter jurisdiction asserting a violation of federal law, the court applies federal common law to the issue of attorney-client privilege. *Id.* ("Because the plaintiffs have sued the defendants for a violation of federal law, the federal law of privilege applies to this issue."); *cf. Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000) (applying state law to attorney-client privilege issues because the federal court sat in diversity jurisdiction).

The existence of an attorney-client relationship is not dependent upon the payment of fees or the execution of a formal contract of representation. *See, e.g.*, *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317-19 (7th Cir. 1978), *cert. denied*, 439 U.S. 955 (1978). An attorney-client relationship's existence "hinges upon the client's belief

4

that he is consulting a lawyer in that capacity and has manifested an intention to seek professional legal advice." *Id.* at 1319 n.12 (citing McCormick on Evidence, § 88, p. 179 (2d ed. 1972)). "Due to the myriad complexities of modern litigation, attorneys and clients often rely on agents during the course of legal representation. Their dialogue sometimes achieves attorney-client status. To qualify for protection, statements to and from third parties must be made in confidence for the purpose of obtaining legal advice from the lawyer." *HPD Laboratories, Inc. v. Clorox Co.*, 202 F.R.D. 410, 414 (D.N.J. 2001) (cleaned up).

### B.  Work Product Doctrine

Rule 26 outlines the work product doctrine:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>   i. They are otherwise discoverable under Rule 26(b)(1); and
>
>   ii. The party shows that is has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B)   *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3). As with the attorney-client privilege, the party asserting the privilege has the burden to prove its applicability. *In re Grand Jury Proceedings*, 655 F.2d

5

882, 887 (8th Cir. 1981). Whether the party resisting disclosure has established the applicability of the work product doctrine is a question of fact:

> The test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024 (1970)). Once the presence of the work product material is established, the burden shifts to the requesting party to overcome the protection by showing substantial need and an inability to obtain equivalent evidence without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *Hickman v. Taylor*, 329 U.S. 495, 512 (1947) ("[A] burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.").

## II. Plaintiff's Claims of Privilege

### A. The Kerns are represented by Mr. Schellack for purposes of responding to the subpoenas in this matter.

It is undisputed that Mr. Schellack represents the Kerns regarding responding to Defendants' subpoenas in this matter. (*See* Defs.' Mem., Dkt. 67, at 11 n.4.) This includes both the Kerns' production of documents and their deposition testimony. Accordingly, any confidential communications between either of the Kerns and their counsel related to the Kerns' depositions or responses to the subpoenas are privileged from discovery. *Yielding*, 657 F.3d at 707.

6

Based on information contained in the Kerns' most recent privilege log (Schellack Decl., Ex. M, Dkt. 80-1), the Court determines that the documents with the following Bates numbers are plainly covered by the privilege between the Kerns and their counsel: Bates Nos. 1077-1234, and 1377-82. The information in Plaintiff's privilege log provides a sufficient basis to determine that these documents contain confidential communications between the Kerns and their counsel made for the purpose of conveying or receiving legal advice. Accordingly, Defendants' motion to compel will be denied with respect to these documents.

### III. Plaintiff's attorney-client privilege applies to the Kerns' other communications with Plaintiff's attorneys.

Whether the Kerns' other communications with Plaintiff's attorneys—that is, communications with Chris Morris and communications with Schellack other than those related to Schellack's representation of them, *see supra* § II—are protected by the attorney-client privilege or the work product doctrine is a thornier question. Defendants argue that any communications between Plaintiff's parents and the attorneys that relate to Plaintiff's claims are not privileged. Plaintiff argues,

(1) the Kerns' communications with Plaintiffs' counsel are protected by the attorney-client privilege via application of Minnesota Rule of Professional Conduct[2] 1.14(c) and 1.6, and

---

[2] Pursuant to Local Rule 83.6(d), the professional conduct of attorneys who practice in this District is governed by the Minnesota Rules of Professional Conduct. *E.g.*, *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998).

7

(2) disclosing their communications with Plaintiff's counsel would reveal attorney work product, mental impressions, and legal theories.

### A. Plaintiff's counsel can consult with the Kerns regarding Plaintiff's case.

Minnesota Rule of Professional Conduct 1.14 addresses an attorney's obligations when representing clients with diminished capacity. In relevant part, it provides:

> When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial, or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably protective action, including consulting individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator, or guardian.

Minn. R. Pro. Conduct 1.14(b). The Rule also provides that "[i]nformation relating to the representation of a client with diminished capacity is protected by Rule 1.6"—i.e., it remains confidential. Minn. R. Pro. Conduct 1.14(c). This rule does not require that a litigant be "legally incapacitated." By its plain language, Rule 1.14 applies when the lawyer "reasonably believes" that the client has a "diminished capacity." Minn. R. Pro. Conduct 1.14(b). Furthermore, Comment 3 to Rule 1.14 contemplates attorneys having family members of a diminished-capacity client participate in discussions with the lawyer and advises that "the presence of such persons generally does not affect the applicability of the attorney-client evidentiary privilege." Minn. R. Pro. Conduct 1.14, cmt. 3.

Defendants argue that any of Plaintiff's counsel's communications with the Kerns are not privileged because "Plaintiff has made no showing that he is legally incapacitated such that his parents are allowed to litigate on his behalf." (Def. Br. at 11.) But this argument misses the mark. Whether Plaintiff is legally incapacitated is different from

8

whether counsel could "reasonably believ[e]" that Plaintiff has diminished capacity under Rule 1.14. In the absence of case law from either the Eighth Circuit or this district to guide the Court's decision, the Court believes that the best course of action is to follow the Rule's standard of "reasonable belief." *See Stevens v. Brigham Young Univ.-Idaho*, Case no. 4:16-cv-00530-DCN, 2018 WL 2974388, at *4 (D. Idaho June 11, 2018) (determining that counsel's belief that third party's presence was necessary was reasonable).

On that front, this Court determines that the record contains sufficient facts to support such a determination. Plaintiff is civilly committed to state custody pursuant to a court order. (First Am. Compl., Dkt. 48 ("FAC"), ¶ 1-2.) A recent neuropsychological evaluation supports a diagnosis of schizoaffective disorder and mild autism spectrum disorder requiring support. (FAC ¶ 12; Schellack Decl., Dkt. 75, Ex. L at 15.) He has diagnoses of schizoaffective disorder and autism. (Schellack Decl., Ex. G at 200; *id.*, Ex. K at 29.) He is unable to answer interrogatories, prepare for depositions, or understand and discuss complex legal theories. (*Id.*, Ex. G at 202-03; *id.*, Ex. H at 58, 193.)

Plaintiff's counsel can reasonably believe that Plaintiff has diminished capacity even though he retains his legal rights. The Kerns are able to provide relevant background information, facts, and timelines that Plaintiff's mental illnesses would make difficult for him to share with counsel. The Kerns were acting as Plaintiff's agent in communicating with counsel, and courts have found no waiver of the attorney-client privilege in similar instances. *E.g.*, *Bulgari v. Bulgari*, 649 F. Supp. 3d 8, 12 (S.D.N.Y. 2023) (preserving privilege under New York law where long-term committed partner was "necessary to facilitate the advice of counsel"); *Oxyn Telecommunications, Inc. v. Onse Telecom*, No.

9

01-cv-1012, 2003 WL 660848, at *3 (S.D.N.Y. Feb. 27, 2003) (privilege preserved where business executive and attorney from third-party corporate entity helped "maximize the effectiveness of [the parties'] attorney-client communications" and whose presence was "intended and expected to enhance communications" across two different cultures); *Stroh v. Gen. Motors Corp.*, 213 A.D.2d 267, 268, 623 N.Y.S.2d 873, 874 (N.Y. App. Div. 1995) (privilege preserved where daughter selected law firm for injured mother, drove her to the law office, and "put her sufficiently at ease to communicate effectively with counsel" about "what was probably the most traumatic experience of her life").

Ultimately, the question for this Court is whether Plaintiff's counsel could reasonably believe that responsible representation required consultation with the Kerns. The closest analog that various authorities address is whether "the presence of [a] relative or friend was reasonably necessary for the protection of the client's interests in the particular circumstances." 1 McCormick on Evid. § 91 (9th ed. 2025); *see also People v. Doss*, 514 N.E.2d 502, 505 (1987) (finding the presence of a third party caused waiver of the attorney-client privilege despite evidence of client's "possibly low intelligence level where the third party testified that the client "needed no help in getting across what was important" to the attorney).

Furthermore, when it comes to family members, courts will look to the circumstances of the relationship and whether the presence or participation of the family member is necessary to effectively communicate with the attorney. *See, e.g.*, *Snedeker v. Snedeker*, Case no. 2:10-cv-189-LJM-WGH, 2011 WL 3555650 (S.D. Ind. Aug. 11, 2011) (determining attorney-client privilege was waived by the presence of a family member

10

because the family member was not acting "on behalf of" the client asserting privilege); *Stroh,.*, 213 A.D.2d at 267 (determining "circumstances weigh heavily in favor of preservation of the privilege" where the presence of the daughter of an aged woman was forced to recall and perhaps relive "what was probably the most traumatic experience of her life" was necessary to facilitate effective communication with counsel); *see also* McCormick on Evidence § 91 (9th ed. 2025) ("As to relatives and friends of the client, the results of the cases are not consistent, but it seems that here not only might it be asked whether the client reasonably understood the conference to be confidential but also whether the presence of the relative or friend was reasonably necessary for the protection of the client's interests in the particular circumstances."). A crucial concern is whether the client and the family member have conflicting interests. *See, e.g.*, *United States v. Bigos*, 459 F.2d 639, 643 (1st Cir. 1972) (district court did not abuse its discretion determining that statement made to lawyer in presence of father was privileged); *Gerheiser v. Stephens*, 712 So.2d 1252, 1254-55 (Fla. Dist. Ct. App. 1998) (defendant's mother's conversation with attorney was privileged where she acted as agent for her son securing legal representation); *Lynch v. Hamrick*, 968 So.2d 11, 16 (Ala. 2007) (daughter's presence at meeting between mother and attorney regarding conveyance of property to daughter destroyed privilege). Nothing in the record demonstrates that Plaintiff and the Kerns have conflicting legal interests.

The specific facts of this case present similar interests as those presented by third-party family members present for attorney-client communications—how to ensure that the attorney has sufficient information to responsibly represent the client. Based on the specific

11

circumstances in this case, including Plaintiff's civil commitment and psychological diagnoses, this Court determines that Plaintiff's counsel could reasonably believe that he has diminished capacity and, therefore, could consult with the Kerns regarding his case under Rule 1.14.[3] Although Plaintiff remains the only named plaintiff and ultimate decision-maker in this case, it is apparent to this Court that counsel could reasonably believe the Kerns' knowledge and consultation was necessary to facilitate the advice of counsel and ensure that Plaintiff received adequate legal representation.

Accordingly, counsel's communications with the Kerns made for the purpose of obtaining or providing legal advice as it pertains to Plaintiff are protected from discovery by the attorney-client privilege.

### B. Work Product doctrine also protects identified documents from disclosure.

Plaintiff also asserts that the Kerns' communications with his counsel are protected from compelled disclosure by the work product doctrine. The purpose of the work product doctrine is to prevent discovery of a lawyer's mental impressions, and requiring Plaintiff to disclose his counsel's communications about the basis for his claims would violate that protection. To invoke work product protection, Plaintiff must demonstrate that the

---

[3] In *Stevens*, the court determined that the privilege applied only to those communications where both the client and the client's family members were present. 2018 WL 2974388, at *4 (noting the commentary to Idaho Rule 1.14 states that the assistant's "participat[ion] in discussions with the lawyer" did not therefore require that all of the assistant's communications with the lawyer were cloaked with the attorney-client privilege). The client in *Stevens*, however, neither was civilly committed nor faced similar psychological challenges as documented in this case. Accordingly, the Court determines that the specific facts of this case justify a broader application of the attorney-client privilege to ensure fair and adequate legal representation.

documents were prepared in anticipation or for the purpose of litigation. *E.g.*, *Simon*, 816 F.2d at 401. According to the Eighth Circuit, "the test [for work-product protection] should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (cleaned up).

Plaintiff's 37-page Second Revised Privilege Log sets forth seven columns of information for each document, including "Author," "Recipient," "CC," "Date," "Description (including attachments)," "Privilege Basis," and "Bates #." (Schellack Decl., Ex. M.) The log describes each document using phrases like, *inter alia*, "Email regarding Associated Clinic of Psychology Report," "Email regarding email to Plaintiff's treatment team," "Email regarding revisions to Complaint," and "Email regarding timeline for case, Defendants' response, and trial dates." (Schellack Decl., Ex. M at 3, 6, 7, 8.)

This Court determines that the work product doctrine applies to protect the Kern's communications with Plaintiff's counsel from disclosure and that the documents identified in the Second Revised Privilege Log contain counsel's mental impressions, conclusions, opinions, and/or legal theories. The Plaintiff in this case is a civilly committed individual whose counsel conferred with Plaintiff's parents to build and prosecute Plaintiff's case. The Defendants have requested those communications in discovery. This Court has reviewed the timing of the communications and the descriptions provided in Plaintiff's Second Revised Privilege Log. The Court finds that communications between Plaintiff's counsel and the Kerns would reveal the mental impressions, thoughts, and conclusions of Plaintiff's counsel in evaluating his legal claims and the evolving factual scenario his

13

commitment presents. *See, e.g.*, Second Revised Privilege Log, Dkt. 80-1, at 5 (12/15/23 entry described as "Email regarding timeline of Plaintiff's housing at Saint Peter Facility with attached timeline in word document preparing by [the Kerns]"); *id.* at 8 (2/26/24 entry described as "Email regarding concerns about progress at Fraser and Plaintiff's attendant levels with attached spreadsheet of Behavior Analysis").

The work-product doctrine, however, "is not absolute and may be waived." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002). The Eighth Circuit has held that a party must intend to disclose a document that is otherwise protected by the work-product doctrine to waive the protection as to that specific document. *See Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997); *see also In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/FLN), 2017 WL 5188342, at *5 (D. Minn. Mar. 7, 2017) (finding that "[d]isclosure to a third party of a document otherwise protected as work product waives that protection if 'it has substantially increased the opportunities for potential adversaries to obtain the information'" (quoting 8 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Prac. & Proc.* § 2023, and citing various cases)). Waiver may also arise when the party seeking to assert the protection elects to make a testimonial use of the allegedly protected materials. *E.g.*, *United States v. Nobles*, 422 U.S. 225, 239 (1975). Ultimately, the work product doctrine, including its approach to waiver, "is to be applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." *Pittman*, 129 F.3d at 988.

Although Mr. Morris and the Kerns are technically third-parties to Plaintiff's attorney-client relationship with Mr. Schellack, this Court determines that any disclosure

of work-product protected materials made by Plaintiff' counsel to them does not waive that protection. In light of the identities of the third parties, the disclosure of the identified work product does not substantially increase the opportunities for Plaintiff's adversaries to obtain the information. Mr. Morris is Plaintiff's counsel in separate litigation, and he is therefore bound to maintain client confidences under the Rules of Professional Conduct. *See* Minn. R. Pro. Conduct 1.6. And as established above, the Kerns are Plaintiff's parents who are aiding his counsel in bringing Plaintiff's claims to the court, and their communications with counsel are protected by the attorney-client privilege. Simply because work product was shared with Plaintiff's other counsel and his parents does not mean the work product protection has been waived. *Cf. In re Bair Hugger*, 2017 WL 5188342, at *5 (determining that even if documents were entitled to work product protection, "that protection was waived when [the sender] intentionally sent these documents out into the world knowing they might end up in 3M's hands" by, *inter alia*, "mass-emailing a professional group's membership list"). Additionally, Defendants have not established a substantial need for these documents to prepare their case, nor that they could not obtain their substantial equivalent by other means without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *Regents of the Univ. of Minn. v. United States*, 340 F.R.D. 293, 314-15 (D. Minn. 2021). Based on Plaintiff's description of the documents identified in the privilege log, the specific factual circumstances present in this case, and Defendants' failure to establish substantial need for the documents identified, this Court determines that the work product doctrine prevents the compelled disclosure of the documents in Plaintiff's Second Revised Privilege Log.

## **ORDER**

For the reasons stated above, and based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Compel Discovery (Dkt. 65) is **DENIED**.

Dated: July 31, 2025

                                               *s/   Shannon G. Elkins*
                                               SHANNON G. ELKINS
                                               United States Magistrate Judge